JUDGE DAVID BRIONES

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## EL PASO DIVISION

FILED

2022 OCT 28  PM 3: 15

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY _____
DEPUTY

|  |  |
|---|---|
| **ERIK SALAIZ,** | § |
| | § |
| **Plaintiff,** | § |
| | § |
| **v.** | § |
| | § |
| **MV REALTY OF TEXAS LLC,** a Texas Limited | § |
| Liability Company and **AMANDA J. ZACHMAN** | § |
| | § |
| **Defendants.** | § |
| | § |

# EP22CV0391

## PLAINTIFF'S ORIGINAL COMPLAINT

## PARTIES

1.      Plaintiff ERIK SALAIZ is a natural person and is a citizen of the Western District of

Texas and was present in the Western District of Texas during all calls at issue in this case.

2.      Defendant MV REALTY OF TEXAS LLC ("MVR") is a limited liability company

organized and existing under the laws of Texas with its principal address at 219 Dixie Boulevard,

Delray Beach, Florida 33444 and can be served via its registered agent C T Corporation System

at 1999 Bryan Street, Suite 900, Dallas, Texas 75201.

3.      Defendant AMANDA J. ZACHMAN ("Zachman") is a natural person, resident of

Florida, Founder, and Officer of Defendant MVR and can be served at 7082 Siena Court, Boca

Raton, Florida 33433.

4.  Defendants MVR and Zachman are hereinafter referred to collectively as ("Defendants").

## NATURE OF ACTION

5.      As the Supreme Court recently explained, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. . . . For nearly 30 years, the people's representatives in Congress have been fighting back." *Barr v. Am. Ass'n of Pol. Consultants LLC*, 140 S. Ct. 2335, 2343 (2020).

6.      Plaintiff Erik Salaiz ("Plaintiff") brings this action under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, alleging that Defendants telemarketers and agents placed illegal unauthorized telemarketing phone calls to him in violation of the TCPA.

7.      Defendants offer cash incentives to homeowners in exchange to become their future listing agent/realtor.  As part of marketing their services, Defendants hired and authorized telemarketers to place illegal unauthorized phone calls to Plaintiff's cell phone that used an automatic telephone dialing system ("ATDS").

8.      Plaintiff never consented to receive any of these phone calls, which were placed to him for telemarketing purposes.


## JURISDICTION AND VENUE:

9.      This Court has federal subject matter jurisdiction under 28 U.S.C. § 1331, as this case arises under the Telephone Consumer Protection Act, 47 U.S.C. § 227, which is a federal statute.

10.     This Court has supplemental subject matter jurisdiction over Plaintiff's claim arising under Texas Business and Commerce Code 305.053 because that claim arises from the same nucleus of operative fact, i.e., Defendants' telemarketing calls to Plaintiff, and adds little complexity to the case, so it is unlikely to predominate over the TCPA claims.

11.     This Court has personal jurisdiction over Defendants because they conduct business in this District and in the State of Texas and because the events giving rise to this lawsuit occurred in this District.

12.     Venue is proper in this District pursuant to 28 U.S.C. §1391(b) because Defendants regularly conduct business in the State of Texas and in this District, and because the wrongful conduct giving rise to this case occurred in this District.

**THE TELEPHONE CONSUMER PROTECTION ACT OF 1991, 47 U.S.C. § 227**

13.     In 1991, Congress enacted the TCPA to restrict the use of sophisticated telemarketing equipment that could target millions of consumers *en masse*.  Congress found that these calls were not only a nuisance and an invasion of privacy to consumers specifically but were also a threat to interstate commerce generally.  *See* S. Rep. No. 102-178, at 2-3 (1991), as reprinted in 1991 U.S.C.C.A.N. 1968, 1969-71.

14.     The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii).

15.     The TCPA makes it unlawful "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes, is made solely pursuant to the collection of a debt owed to or guaranteed by the United States or is exempted by rule or order" of the Federal Communication Commission ("FCC"). 47 U.S.C. § 227(b)(1)(B).

16.     The TCPA provides a private cause of action to persons who receive calls in violation of § 227(b). 47 U.S.C. § 227(b)(3).

3

17.     Separately, the TCPA bans making telemarketing calls without a do-not-call policy available upon demand. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(d)(1).[1]

18.     The TCPA provides a private cause of action to persons who receive calls in violation of § 227(c) or a regulation promulgated thereunder. 47 U.S.C. § 227(c)(5).

19.     According to findings of the FCC, the agency vested by Congress with authority to issue regulations implementing the TCPA, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls and can be costly and inconvenient.

20.     The FCC also recognizes that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 14115 ¶ 165 (2003).

21.     The FCC requires "prior express written consent" for all autodialed or prerecorded telemarketing robocalls to wireless numbers and residential lines.  In particular:[A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer:  (1) received clear and conspicuous disclosure of the consequences of providing the requested consent, *i.e.*, that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates. In addition, the written agreement must be obtained without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any goods or service.

22.     *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 FCC Rcd. 1830, 1844 ¶ 33 (2012) (footnote and internal quotation marks omitted). FCC

---

[1] *See* Code of Federal Regulations, Title 47, Parts 40 to 60, at 425 (2017) (codifying a June 26, 2003 FCC order).

regulations "generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

23.     The FCC confirmed this principle in 2013, when it explained that "a seller …may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." In the Matter of the Joint Petition Filed by Dish Network LLC, 28 FCC Rcd. 6574, 6574 ¶ 1 (2013).

24.     Under the TCPA, a text message is a call. *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663 (2016).

## **FACTUAL ALLEGATIONS:**

25.     Plaintiff's personal cell phone (XXX) XXX-0898 has been registered on the National Do-Not-Call Registry since August 19, 2021.

26.     Plaintiff never asked the National Do-Not-Call Registry administrator to remove him from the National Do-Not-Call Registry and Plaintiff was on the National Do-Not-Call Registry at all times relevant to this Complaint.

27.     Defendant MVR is a real estate company.

28.     Defendant Zachman is the founder and officer of Defendant MVR.

29.     Defendant MVR offers a "homeowner benefit" program to homeowners.

30.     Defendant MVR's "homeowner benefit" program was designed by Defendant Zachman and offers homeowners a cash incentive between $300-$5,000 in exchange of becoming the homeowners listing agent/realtor in the event the homeowner was to sell their house. *See Exhibit A.*

31.     Defendants MVR and Zachman earn a 6% commission of the selling price when becoming the realtor for the homeowners that enroll into their "homeowner benefit" program in the event the homeowner sells their home.

32.     As part of their marketing, Defendants MVR and Zachman hire and authorizes telemarketers to make unauthorized phone calls to thousands of consumers *en masse* using an automatic telephone dialing system ("ATDS") to solicit their "homeowner benefit" program.

33.     Defendant Zachman approves of the contracts with these telemarketers.

34.     Defendant Zachman authorizes the payments to the telemarketers.

35.     Defendant Zachman pays the telemarketers out of bank accounts she owns and controls.

36.     Defendants MVR and Zachman are well aware that the unauthorized phone calls being made on their behalf soliciting their "homeowner benefit" program violate the TCPA.

37.     Defendant MVR and Zachman knowingly and willfully violate the TCPA because doing so benefits them financially when homeowners enroll into their "homeowner benefit" program.

38.     Plaintiff received at least nineteen (19) unauthorized phone calls to his personal cell phone (XXX) XXX-0898 from telemarketers calling on behalf of Defendants MVR and Zachman soliciting their "homeowner benefit" program within a thirty-day period ("the calls").

39.     16 of 19 of the calls all started with a 3-4 second delay of dead air followed by an audible beep (indicating the calls were made using an ATDS) before connecting Plaintiff to a telemarketer.

40.     2 of 19 of the calls were a ringless prerecorded voicemail drop message soliciting Defendants "homeowner benefit" program.

41.     Plaintiff has never had any relationship with Defendants , and never knew who Defendants were prior to the calls being made to his personal cell phone.

42.     Upon information and belief Plaintiff has received additional calls within the past two years from or on behalf of Defendants that are unknown to Plaintiff at this time and will be revealed during discovery.

43.     Defendant Zachman is the officer of MV Realty PBC, LLC which is the headquarters for Defendant MVR.

44.     MV Realty PBC, LLC has been sued prior to this lawsuit for violating the TCPA *Arredondo v. MV Realty PBC, LLC*, No. 3:22-cv-00221-DCG (W.D.TX., Jun. 27, 2022) and Defendant Zachman continues to violate the TCPA because it benefits Defendants financially.

45.     On July 25, 2022, Plaintiff received a call to his personal cell phone 0898 from a telemarketer calling on behalf of Defendants from phone number (469) 478-3626.

46.     Plaintiff answered and there was a 3-4 second delay of dead air followed by an audible beep (indicating the call was made using an ATDS) before being connected to a telemarketer named Calvin.

47.     Calvin greeted Plaintiff and falsely identified the company he was calling from "Nationwide Homeowners."

48.     Defendants MVR and Zachman train there telemarketers not to reveal their true identity and say they are calling from "Nationwide Homeowners" in order to hide their true identity and duck liability for violating the TCPA.

49.     Calvin advised Plaintiff he is calling homeowners in the city because his company is offering on average $400-$1000 that never has to be paid back.

50.     Calvin asked Plaintiff if he was a homeowner and verified Plaintiff's zip code.

51.     Calvin then transferred Plaintiff to his "senior supervisor" named Matt Crate.

52.     Matt again advised Plaintiff their company can offer him $400-$1,000 as a homeowner in exchange to use their company as Plaintiff's realtor in the future in the event Plaintiff ever decided to sell his home.

53.     Matt advised Plaintiff he would transfer the call to a "licensed realtor" in the area that will go over the options with Plaintiff and let him know how much he qualifies for.

54.     Plaintiff advised Plaintiff he was interested for the sole purpose of identifying the company responsible for the calls.

55.     Matt then transferred Plaintiff to a licensed realtor agent from Defendant MVR named Mariela Miller.

56.     Before Matt transferred the call, Matt stated to Mariela,

"Hey hi I have Erik Salaiz with me and he is interested so can you please assist him to see how much we can offer him."

57.     Mariela accepted the transfer which confirmed Defendants MVR and Zachman authorize telemarketers to solicit their "homeowner benefit" program on behalf of Defendants.

58.     Mariela then solicited Plaintiff for Defendants "homeowner benefit" program and offered Plaintiff $365 in exchange for Defendant MVR to be Plaintiff's future realtor agent if he decided to sell his home.

59.     Mariela advised Plaintiff that MVR would charge Plaintiff 6% for being his realtor if Plaintiff ever decided to sell his home.

60.     Plaintiff received an email and text message from Mariela that summarized their conversation along with Defendants homeowner benefit agreement. *See Exhibit B.*

61.     The email and text Plaintiff received from Mariela confirmed the company and individual responsible for the calls.

62.     Defendant Zachman is listed as the officer in the homeowner benefit agreement Plaintiff received from Mariela. *See Exhibit B.*

63.     Plaintiff advised Mariela he would review the agreement and call her back if Plaintiff was interested.

64.     Plaintiff did not give Mariela his prior express written consent to call him back and follow up.

65.     Mariela called Plaintiff back the next day to follow up.

66.     Plaintiff emailed Mariela to her email <u>marielamiller@homesatmv.com</u> and advised Mariela he was not interested and to please stop calling. *See Exhibit C.*

67.     Despite Plaintiff's request not to be called anymore the calls from Defendants telemarketers continued that led to more real estate agents from Defendants. *See Exhibit D.*

68.     Defendants telemarketers spoofed the caller ID numbers on six (6) occasions when calling Plaintiff to a (915) area code to trick Plaintiff into thinking the calls were local.

69.     Table A below summarizes the phone calls Plaintiff received on behalf of Defendants MVR and Zachman:

Table A

| Number: | Date | Time | Caller ID | Notes |
|---|---|---|---|---|
| 1 | 07/25/2022 | 12:51 PM | 479-324-4921 | Telemarketer calling from Nationwide Homeowners. |
| 2 | 07/25/2022 | 3:58 PM | 219-627-8497 | Telemarketer calling from Nationwide Homeowners. |
| 3 | 07/25/2022 | 5:27 PM | 469-478-3626 | Telemarketer Calvin calling from Nationwide Homeowners. Transferred to Mariela. She emailed and text info. |
| 4 | 07/26/2022 | 8:59 AM | 713-677-1476 | Follow up call from Mariela. Emailed her not interested and please stop calling. |
| 5 | 07/27/2022 | 5:42 PM | 469-812-4224 | Telemarketer calling from Nationwide Homeowners. |

| 6 | 07/28/2022 | 8:44 AM | 737-248-7765 | Telemarketer calling from Nationwide Homeowners. Transferred to Kyleigh from MVR call dropped. |
|---|---|---|---|---|
| 7 | 07/28/2022 | 8:51 AM | 832-497-3694 | Kyleigh called back and emailed her info. Confirmed it was MVR. |
| 8 | 07/28/2022 | 11:46 AM | 830-266-0356 | Telemarketer calling from Nationwide Homeowners. |
| 9 | 07/29/2022 | 10:50AM | 956-306-6178 | Telemarketer calling from Nationwide Homeowners. Told them I already spoke with them and to please stop calling. He told me to me just to hear their offer and transferred me to Jeannie from MVR call dropped. |
| 10 | 07/29/2022 | 10:50 AM | 832-952-6115 | Call back from Jeannie she emailed her info. |
| 11 | 08/02/2022 | 11:41 AM | 956-306-6178 | Telemarketer calling from Nationwide Homeowners. |
| 12 | 08/03/2022 | 10:08 AM | 915-666-3248 | Telemarketer calling from Nationwide Homeowners. |
| 13 | 08/03/2022 | 5:26 PM | 915-666-3248 | Telemarketer calling from Nationwide Homeowners. |
| 14 | 08/09/2022 | 9:24 AM | 915-465-2692 | Prerecorded ringless voice drop |
| 15 | 08/09/2022 | 4:40 PM | 915-465-2692 | Telemarketer calling from Nationwide Homeowners. Advised them I already spoke with them please stop calling. |
| 16 | 08/15/2022 | 12:45 PM | 915-348-5702 | Telemarketer calling from Nationwide Homeowners. Told them I already spoke with them. |
| 17 | 08/15/2022 | 3:11 PM | 364-888-7216 | Prerecorded ringless voice drop |
| 18 | 08/17/2022 | 12:39 PM | 681-508-6052 | Telemarketer calling from Nationwide Homeowners. |
| 19 | 08/23/2022 | 2:17 PM | 915-233-4146 | Telemarketer calling from Nationwide Homeowners. |

70.     Defendants MVR and Zachman employ outrageous, aggressive, and illegal sales techniques that violate multiple federal laws and state consumer statutes.

71.     Defendants' telemarketers and their agents and co-conspirators amassed lists of thousands of potential customers from public records, and data aggregators, and then placed phone calls using an ATDS *en masse* to market their "homeowner benefit" program.

72.     Defendants have knowledge of and have adopted and maintained TCPA violations as a sales strategy. Defendants knew full well that their telemarketers are calling and harassing consumers in an attempt to procure business on behalf of the Defendants. Defendants willfully accepts these referrals and compensate the telemarketers for their illegal unauthorized phone calls.

73.     Defendants MVR and Zachman refuse to take any action to stop or curtail the unlawful sales practices that violate the TCPA because these practices benefit Defendants financially.

74.     Defendants MVR and Zachman are not registered pursuant to § 302.101 of the Texas Business & Commerce Code to provide telephone solicitations. The https://direct.sos.state.tx.us/telephonesearch.asp website ("Texas Registration Database") does not contain neither Defendants registration.

75.     Defendants MVR and Zachman do not qualify for an exemption under § 302.053.

76.     No emergency necessitated none of the alleged phone calls.

77.     Plaintiff sent an internal do-not-call policy request to Defendants to email info@homesatmv.com on October 25, 2022, which is an email listed on the agreement Plaintiff received from Mariela and to amanda@mvrealtyfl.com on October 25, 2022, which is an email owned and controlled by Defendant Zachman.

78.     Plaintiff received an internal do-not-call policy from Defendant Zachman. *See Exhibit E.*

79.     Upon information and belief, Defendants MVR and Zachman did not train their telemarketers/agents who engaged in telemarketing on the existence and use of Defendant MVR's internal do not call policy as they failed to recognize Plaintiff's personal cell phone 0898 is registered on the National Do-Not-Call Registry.

80.     Such conduct violates the TCPA and its implementing regulations, 47 CFR §

64.1200(d)(3)(requiring telemarketers to honor and record DNC requests when made).

81.     Plaintiff was harmed by the calls. Plaintiff was temporarily deprived of legitimate use of

his phone because the phone line was tied up during the telemarketing calls and his privacy was

improperly invaded. Moreover, these calls injured Plaintiff because they were frustrating,

obnoxious, annoying, were a nuisance and disturbed the solitude of Plaintiff. The calls caused

Plaintiff's cell phone battery's depletion, used up cellular data, and prevented Plaintiff from

otherwise using his telephone for lawful purposes.

## VICARIOUS LIABILITY OF DEFENDANTS MVR AND ZACHMAN

82.     Defendants MVR and Zachman are vicariously liable for the telemarketing calls that

generated the lead on their behalf.

83.     The FCC is tasked with promulgating rules and orders related to enforcement of the

TCPA. 47 U.S.C. § 227(b)(2).

84.     The FCC has explained that its "rules generally establish that the party on whose behalf a

solicitation is made bears ultimate responsibility for any violations." *In re Rules & Regulations*

*Implementing the Telephone Consumer Protection Act of 1991*, 10 FCC Rcd. 12391, 12397 ¶ 13

(1995).

85.     The FCC reiterated that a company on whose behalf a telephone call is made bears the

responsibility for any violations. *In re Rules and Regulations Implementing the Telephone*

*Consumer Protection Act of 1991*, 23 FCC Rcd. 559, 565 ¶ 10 (2008) (recognizing "on behalf

of" liability in the context of an autodialed or prerecorded message call sent to a consumer by a

third party on another entity's behalf under 47 U.S.C. § 227(b)).

86.     The FCC confirmed this principle in a declaratory ruling holding that sellers such as Post

may not avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because sellers may have thousands of independent marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy.

*In re DISH Network, LLC*, 28 FCC Rcd. 6574, 6588 ¶ 37 (2013) (footnote omitted) (alteration marks and internal quotation marks omitted).

87.     More specifically, *Dish* held that, even in the absence of evidence of a formal contractual relationship between the seller and the telemarketer, a seller is liable for telemarketing calls if the telemarketer "has apparent (if not actual) authority" to make the calls. *Id.* at 6586 ¶ 34.

88.     The ruling rejected a narrow view of TCPA liability, including the assertion that a seller's liability requires a finding of formal agency and immediate direction and control over the third-party who placed the telemarketing call. *Id.* at 6587 ¶ 36 & n.107.

89.     To the contrary, the FCC—armed with extensive data about robocalls and Americans' complaints about them—determined that vicarious liability is essential to serve the TCPA's remedial purpose of protecting Americans from "unwanted telemarketing invasions." *Id.* at 6587 ¶ 36.

90.     Vicarious liability is important because reputable, traceable, and solvent companies that benefit from illegal telemarketing are "in the best position to monitor and police TCPA compliance by third-party telemarketers." *Id.* at 6588 ¶ 37.

91.     Defendants MVR and Zachman are legally responsible for ensuring that the affiliates that make telemarketing calls on their behalf comply with the TCPA when so doing.

92.     Defendants MVR and Zachman knowingly and actively accepted business that originated through illegal telemarketing.

93.     Defendants MVR and Zachman knew (or reasonably should have known) that their telemarketers were violating the TCPA on their behalf but failed to take effective steps within their power to force the telemarketer to cease that conduct.

94.     By hiring a company to make calls on its behalf, Defendants MVR and Zachman "manifest[ed] assent to another person . . . that the agent shall act on the principal's behalf and subject to the principal's control" as described in the Restatement (Third) of Agency ("Restatement").

95.     Moreover, Defendants MVR and Zachman maintained interim control over the actions of its telemarketers.

96.     For example, Defendants MVR and Zachman had absolute control over whether, and under what circumstances, they would accept a customer from its telemarketers.

97.     Furthermore, Defendants MVR and Zachman had day-to-day control over the actions of its telemarketers, including the ability to prohibit them from using an ATDS to contact potential customers of Defendant MVR and the ability to require them to respect the National Do Not Call Registry.

98.     Defendants MVR and Zachman also gave interim instructions to its telemarketers by providing lead-qualifying instructions and lead volume limits.

99.     Defendants MVR and Zachman donned its telemarketers with apparent authority to make the calls at issue. Thus, the telemarketers pitched Defendants "homeowner benefit" program in the abstract.

100.    Apparent authority turns on whether a third party believes the principal authorized its agent to act and the belief is "traceable" to a manifestation of the principal. Restatement § 2.03 cmt. c.

101.    "[A]pparent authority can arise in multiple ways and does *not* require that 'a principal's manifestation must be directed to a specific third party in a communication made directly to that person.'" *Dish*, 28 FCC Rcd. at 6586 ¶ 34 n.102 (quoting Restatement § 2.03 cmt. c).

102.    A principal may make a manifestation "by directing an agent to make statements to third parties or directing or designating an agent to perform acts or conduct negotiations, placing an agent in a position within an organization, or placing an agent in charge of a transaction or situation." Restatement § 2.03 cmt. c.

103.    Defendants MVR and Zachman telemarketers transferred customer information, including Plaintiff's contact information, directly to Defendant MVR. Thus, the telemarketer had the "ability . . . to enter consumer information into the seller's sales or customer systems," which the FCC has explained to show apparent agency. *Dish*, 28 FCC Rcd. at 6592 ¶ 46.

104.    Finally, the FCC has held that called parties may obtain "evidence of these kinds of relationships . . . through discovery, if they are not independently privy to such information." *Id.* at 6592-93 ¶ 46. Evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593 ¶ 46.

105.    Defendants MVR and Zachman are the liable party as the direct beneficiary of the illegal

telemarketing calls as they stood to gain Plaintiff as a customer when telemarketers solicited

Plaintiff for their "homeowners benefit" program on behalf of Defendants.

## DEFENDANT ZACHMAN IS PERSONALLY LIABLE

106.    Defendant Zachman refuses to take any action to stop or curtail the unlawful sales

practices and illegal unauthorized phone calls because these practices benefit Defendant

Zachman financially when homeowners enroll into Defendant MVR's "homeowner benefit"

program.

107.    "If the officer directly participated in or authorized the statutory violation, even though

acting on behalf of the corporation, he may be personally liable.  See *United States v*

*Pollution Serv. Of Oswego, Inc.*, 763 F.2d 133, 134-135 (2nd Cir.1985)

108.    The "well-settled" tort rule provides that "when corporate officers directly participate in

or authorized the commission of a wrongful act, even if the act is done on behalf of the

corporation, they may be personally liable." *General Motos Acceptance Corp. v. Bates*, 954

F.2d 1081, 1085 (5th Cir. 1992).  The Fifth Circuit has elaborated that "the thrust of the

general [tort] rule is that the officer to be held personally liable must have some direct,

personal participation in the tort, as where the defendant was the 'guiding spirit' behind the

wrongful conduct....or the 'central figure' in the challenged corporate activity." *Mozingo v.*

*Correct Mfg. Corp.*, 752 F.2d 168, 174 (5th Cirt. 1985) (Citing *Escude Cruz v. Ortho*

*Pharmaceutical Corp.*, 619 F. 2d 902, 907 (1st Cir.1980)) (Citing *Texas v. American Blastfax,*

*Inc.*, 164 F. Supp. 2d 892 (W.D. Tex. 2001)

109.    Quoting Texas v. American Blastfax:

> The Court finds the above principles applicable to the TCPA that is, an officer may be
> personally liable under the TCPA if he had direct, personal participation in or

16

personally authorized the conduct found to have violated the statute, and was not merely tangentially involved. Individuals who directly (and here, knowingly and willfully) violate the TCPA should not escape liability solely because they are corporate officers. As the State persuasive argues, to hold otherwise would allow the individual defendants to simply dissolve Blastfax, set-up a new shell corporation, and repeat their conduct. Congress surely did not intend to permit such a result in passing the TCPA.

To be clear, the Court finds Greg and Michael Horne were the "guiding spirits" an the "central figures" behind the TCPA violations. They were the two persons who controlled all of Blastfax's day-to-day operations. They both had direct, personal involvement in and ultimate control over every aspect of Blastfax's wrongful contuct that violate the TCPA, and/or directly controlled and authorized this conduct. And they did so with their eyes and pocketbooks wide open. After October 5, 2000, Greg and Michael Horne had good reason to believe they were running a business that violated the TCPA. On February 9, 2001, they knew they were. Yet they continued to direct their company to send unsolicited intrastate fax advertisements. This is fare more than a simple derivative liability case. Accordingly, the Court *899 holds defendants Greg and Michael Horne are jointly and severally liable with Defendant Blastfax, Inc., for all TCPA damages in this lawsuit." Texas v. American Blastfax, Inc., 164 F. Supp. 2d 892 (W.D. Tex. 2001)

110.    The Same Court held that corporate officers were also personally liable for DTPA violations

The State contends Greg and Michael Horne are personally liable for any DTPA damages because they were solely responsible for the violating conduct…..For the same reasons discussed in finding the individual defendants personally liable under the TCPA, the Court agrees. See, e.g., *Barclay v. Johnson*, 686 S.W.2d 334, 336-37 (Tex. Civ. App.-Houston [1ST Dist.] 1985, no writ) (finding personal liability for corporate officer in DTPA misrepresentation claim, based on general rule that "a corporate agent knowingly participating in a tortious of fraudulent act may be held individually liable, even though he performed the act as an agent for the corporation……Accordingly, the Court finds defendants American Blastfax, Inc., Greg Horne and Michael Horne are jointly and severally liable for $6,000 in damages for their violations of the DTPA." *Texas v. American Blastfax, Inc.*, 164 F. Supp. 2d 892 (W.D. Tex. 2001

111.    At all times material to the Complaint, acting alone or in concert with others,

Defendant Zachman has formulated, directed, controlled, had the authority to control, or

participated in the acts and practices of Defendant MVR including the acts or practices set forth in this Complaint.

112.     Defendant Zachman is the principal director and operator of Defendant MVR controls the day-to-day operations of Defendant MVR and directed their representatives, employees, agents, salespersons, and telemarketers to make TCPA violating phone calls to solicit their "homeowners benefit" program on behalf of Defendants.

113.     Defendant Zachman knowingly and willfully ignores the law. These violations are the direct result of the instructions Defendant Zachman has given to their telemarketers, representatives, agents, employees, solicitors, salespersons, and others that carry out her schemes.

114.     Defendant Zachman is not merely a bystander and is the mastermind that scheme, planned, directed, initiated, and controlled the illegal and fraudulent behavior.

115.     Defendant Zachman is well aware their conduct violated the TCPA and Tex. DPTA and refused to alter their behavior.  Defendant Zachman is the sole director of Defendant MVR and the only person with the power to make the unlawful, fraudulent, and unethical behavior stop.  Yet, Defendant Zachman has taken no steps to stop the behavior because the behavior benefits Defendants financially.

116.     Defendant Zachman should be held jointly and severally liable for both the TCPA violations and via the Tex. DTPA because she actually committed the conduct that violated the TCPA and Tex. DTPA, and/or she actively oversaw and directed this conduct.

117.     Defendant Zachman should be held liable because to do otherwise would simply allow her to dissolve Defendant MVR and set up a new corporation and repeat her conduct.  This would result in both the TCPA and DTPA being unenforceable.

## THE TEXAS BUSINESS AND COMMERCE CODE 305.053

118.    The Texas Business and Commerce code has an analogous portion that is related to the

TCPA and was violated in this case.

119.    The Plaintiff may seek damages under this Texas law for violations of 47 USC 227 or

subchapter A and seek $500 in statutory damages or $1500 for willful or knowing damages.

## VIOLATIONS OF THE TEXAS BUSINESS AND COMMERCE CODE § 302.101

120.    The actions of the Defendants violated the Texas Business and Commerce Code 302.101

by placing solicitation phone calls to a Texas resident without having registration certificate and

bond on file with the Texas Secretary of State.

121.    Texas Business and Commerce Code § 302.101 provides a private right of action.  A

violation of Chapter 302 "is a false, misleading, or deceptive act or practice under Subchapter E,

Chapter 17" and is enforceable as such: "A public or private right or remedy prescribed by

Subchapter E, Chapter 17, may be used to enforce [Chapter 302." Tex. Bus. & Com. Code §

302.303.

122.    The use or employment by any person of a false, misleading, or deceptive act or practice"

causes "economic damages or damages for mental anguish." Tex. Bus. & Com. Code § 17.50.

123.    Texas Business and Commerce Code §302.101 states that a person (1) "may not make a

telephone solicitation" (a) "from a location in [Texas]" or (b) "to a purchaser located in [Texas],"

(2) "unless the [person] holds a registration certificate for the business location from which the

telephone solicitation is made." Tex. Bus. & Com. Code § 302.101(a).

124.    Under Texas Business and Commerce Code § 302.302 Plaintiff is entitled to seek

damages of up to $5000 per violation of §302.101.

## INJURY, HARM, DAMAGES, AND ACTUAL DAMAGES
## AS A RESULT OF THE CALLS

125.    Plaintiff has been denied the use of his phone, enjoyment of his phone, and had the functionality of his phone decreased because of unnecessary charging, erosion of phone memory, and had his privacy invaded by the harassing robocalls.

126.    Defendants' calls harmed the Plaintiff by causing the very harm that Congress sought to prevent a "nuisance and invasion of privacy."

127.    Plaintiff has been annoyed, harassed, and irritated by unauthorized calls placed by and/or on behalf of Defendants.

128.    Defendants' calls harmed the Plaintiff by trespassing upon and interfering with Plaintiff's rights and interests in Plaintiff's cellular telephone by placing unwanted telemarketing calls to the Plaintiff.

## THE PLAINFF'S CELL PHONE IS A RESIDENTIAL NUMBER

129.    The calls were to the Plaintiff's cellular phone (XXX) XXX-0898, which is the Plaintiff's personal cell phone that he uses for personal, family, and household use. The Plaintiff maintains no landline phones at his residence and has not done so for at least 10 years and primarily relies on cellular phones to communicate with friends and family. The Plaintiff also uses his cell phone for navigation purposes, sending and receiving emails, timing food when cooking, and sending and receiving text messages. The Plaintiff further has his cell phone registered in his personal name, pays the cell phone from his personal accounts.

## CAUSES OF ACTION:

### COUNT ONE:
### Violations of the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii), by Automated Telemarketing Without Prior Express Written Consent

130.    Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

131.     Defendants and/or their affiliates or telemarketers violated the TCPA, 47 U.S.C. §
227(b)(1)(A)(iii), at least nineteen (19) times by placing non-emergency telemarketing calls to
Plaintiff's cellular telephone number using an automatic telephone dialing system without his
prior express written consent.

132.     Plaintiff was statutorily damaged at least nineteen (19) times under 47 U.S.C. §
227(b)(3)(B) by Defendants by the telephone calls described above, in the amount of $500.00 per
call.

133.     Plaintiff was further statutorily damaged because Defendants willfully or knowingly
violated this subsection of the TCPA. Plaintiff requests that the court treble the damage amount
to $1,500.00 as permitted under U.S.C. § 227(b)(3)(C) for each and every willful and/or knowing
violation.

134.     Plaintiff is also entitled to and does seek an injunction prohibiting Defendants and their
affiliates and agents from violating the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii), by placing non-
emergency telemarketing calls to any cellular telephone number using an ATDS and/or without
prior express written consent.

**COUNT TWO:**
**(Violation of the TCPA "Sales Call/DNC" Prohibition, 47 U.S.C. 227(c), and 47 C.F.R. §**
**64.1200(C))**

135.     Plaintiff realleges and incorporates by reference each and every allegation set forth in the
preceding paragraphs.

136.     Defendants telemarketers/agents called Plaintiff's private residential telephone number
which was successfully registered on the National Do-Not-Call Registry more than thirty-one
(31) days prior to the calls for the purposes of commercial solicitation, in violation of 47 U.S.C.
§ 227(c)(3)(F), and 47 C.F.R. § 64.1200(c)(2).

137.    Plaintiff was statutorily damaged at least nineteen (19) times under 47 U.S.C. §

227(c)(3)(F) by Defendants by the telemarketing calls described above, in the amount of $500.00

per call.

138.    Plaintiff was further statutorily damaged because Defendants willfully and/ or knowingly

violated this subsection of the TCPA. Plaintiff requests that the court treble the damage amount

as permitted under U.S.C. § 227(c)(5) for each and every willful and/or knowing violation.

139.    Plaintiff is entitled to an award up to $1,500 in damages for each knowing or willful

violation of 47 U.S.C. § 227(c)(3)(F).

**COUNT THREE:**
**Telemarketing Without Mandated Safeguards, 47 C.F.R. § 64.1200(d)**

140.    Plaintiff incorporates the forgoing allegations as if fully set forth herein.

141.    The foregoing acts and omissions of Defendants and/or their telemarketers constitute

multiple violations of FCC regulations by making telemarketing solicitations despite lacking the

following:

      a.  A written policy, available upon demand, for maintaining a do-not-call list, in

           violation of 47 C.F.R. § 64.1200(d)(1) [2];

      b.  Training for the individuals involved in the telemarketing on the existence of and

           use of a do-not-call list, in violation of 47 C.F.R. § 64.1200(d)(2) [3]; and,

      c.  In the solicitations, the name of the individual caller and the name of the person or

           entity on whose behalf the call is being made, in violation of 47 C.F.R. §

           64.1200(d)(4). [4]

---

[2] *See id.* at 425 (codifying a June 26, 2003 FCC order).
[3] *See id.* at 425 (codifying a June 26, 2003 FCC order).
[4] *See id.* at 425 (codifying a June 26, 2003 FCC order

142.    Plaintiff is entitled to an award of at least $500 in damages for each such violation. 47

U.S.C. § 227(c)(5)(B).

143.    Plaintiff is entitled to an award of up to $1,500 in damages for each such knowing or

willful violation. 47 U.S.C. § 227(c)(5).

## COUNT FOUR

### (Violations of The Texas Business and Commerce Code 305.053)

144.    Plaintiff incorporates the foregoing allegations as if set forth herein.

145.    The foregoing acts and omissions of Defendants and/or their telemarketers or agents

constitute multiple violations of the **Texas Business and Commerce Code 305.053**, by

making non-emergency telemarketing calls to Plaintiff's cellular telephone number without

his prior express written consent in violation of 47 U.S.C. § 227 et seq. The Defendants

violated 47 U.S.C. § 227(d) and 47 U.S.C. § 227(d)(3) and 47 U.S.C. § 227(e) by using an

ATDS that does not comply with the technical and procedural standards under this

subsection.

146.    Plaintiff seeks for himself an award of at least $500.00 in damages for each such

violation. **Texas Business and Commerce Code 305.053(b).**

147.    Plaintiff seeks for himself an award of up to $1,500.00 in damages for each such knowing

or willful violation. **Texas Business and Commerce Code 305.053**(c).

## COUNT FIVE

### (Violations of Texas Business and Commerce Code 302.101)
### Failure to obtain a Telephone Solicitation Registration Certificate

148.    Plaintiff incorporates and realleges, as though fully set forth herein, each of the

paragraphs above.

122.    Defendants telemarketers/agents made at least nineteen (19) solicitation sales calls to Plaintiff without having a valid telephone solicitation as required under Tex. Bus. Com. Code 302.101.

123.    As a result of Defendants telemarketers/agents' violations of Tex. Bus. and Com. Code 302.101 Plaintiff may seek damages of up to $5,000 for each violation.  Tex. Bus. and Com. Code 302.302(a).

124.    As a result of Defendants' agents' violations of Tex. Bus. and Com. Code 302.101 Plaintiff may seek all reasonable costs of prosecuting this action, including court costs, deposition costs, and witness fees.


## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Erik Salaiz prays for judgment against the Defendants jointly and severally as follows:

A.      Leave to amend this Complaint to name additional DOESs as they are identified and to conform to the evidence presented at trial;

B.      A declaration that actions complained of herein by Defendants violates the TCPA and Texas state law;

C.      An injunction enjoining Defendants and their affiliates and agents from engaging in the unlawful conduct set forth herein;

D.      An award of $1500 per call in statutory damages arising from the TCPA §227(b) intentional violations jointly and severally against the corporation and individual for nineteen calls.

E.      An award of $1500 per call in statutory damages arising from the TCPA §227(c) intentional violations jointly and severally against the corporation and individual for nineteen calls.

F.      An award of $1,500 in statutory damages arising from violations of the Texas Business and Commerce code 305.053

G.      An award of $5,000 in statutory damages arising from violations of the Texas Business and Commerce code 302.101.

H.      An award to Mr. Salaiz of damages, as allowed by law under the TCPA;

I.      An award to Mr. Salaiz of interest, costs, and attorneys' fees, as allowed by law and equity

J.      Such further relief as the Court deems necessary, just, and proper.

October 28, 2022,                              Respectfully submitted,

Erik Salaiz
Plaintiff, Pro Se
319 Valley Fair Way
El Paso, Texas 79907
915-490-0898
Salaiz.ep@gmail.com